The next case today is Annick Roy et al. v. Canadian Pacific Railway Co. Appeal No. 17-1108. Attorney Wessler, please introduce yourself on the record and proceed with your argument. Thank you. May it please the Court, Matthew Wessler for the appellants for the families of those who were killed in the Lockheed Martin Spring Explosion. With the Court's permission, I'd like to reserve four minutes for rebuttal. Yes. Thank you. The view that the pleading of cases is a game in which every miscue should be fatal is fundamentally incompatible with the spirit of the federal rules. I think that's particularly... Counsel, we're not talking about games here, right? We're talking about a question of jurisdiction, which we are bound to honor. The appeal period was either told here or it was not. If it was not told, this Court has no jurisdiction and there's not a thing that we can do about that. So I suggest that rather than practicing your rhetorical skills, you get to the question of whether or not the bankruptcy rules, as opposed to Rule 59, govern the tolling effect of the motion in this case. Sir, Your Honor, I think the answer to that question is no, and I think it's no because in order for the bankruptcy rules to apply, the district court must expressly invoke them, and that never happened here. Why is that so? Because... Suppose a litigant comes into the federal court and the district court never mentions the federal rules of civil procedure or the federal rules of evidence. Those rules are still going to apply, aren't they? Yes, but Your Honor, this is not a bankruptcy proceeding. That might be true. I know it isn't, but the question is, do the bankruptcy rules under Marathon and the applicable statutes, do the bankruptcy rules govern proceedings in related to cases? They either do or they don't. Because the one thing that is crystal clear is that when Congress reorganized the bankruptcy system, it strove to bring uniformity of application. So there's got to be a rule one way or another unless there is an express grant of discretion to someone to pick and choose which set of rules to apply, and I'm aware of no such express grant of jurisdiction. So I agree with everything that Your Honor said, except the last point, which is whether there's discretion to decide which rules apply. All of the cases that are cited in this case, by both sides, on this question, Diamond Mortgage from the Seventh Circuit, Rosenberg from the Eleventh Circuit, they all expressly recognize that it is a district court's discretion whether to apply either the federal rules of civil procedure or the bankruptcy rules based on that district court's own understanding of which rules properly should apply in the proceeding. Excuse me, counsel. I read those cases differently. I don't think any of them hold that, all right? But what is the source of that discretion? Just point me to something in the statute or in Supreme Court precedent that would allow a court to reach that kind of result to give to the district court discretion to pick and choose which set of rules to apply. Well, I don't think there's an explicit grant one way or the other, Your Honor. There is no specific grant that says in district court in a non-core or core proceeding that the bankruptcy rules must apply, but there's also no explicit grant of authority saying that the federal rules must apply, which is why it's discretionary. Counsel, you know, I think there can be a reframing of the basic point that is not put in terms of discretion but is put in these terms. If it is a core proceeding, it's perfectly obvious to everybody that the bankruptcy rules apply. If, however, it is arguably a related proceeding, it is not perfectly obvious. And this court has never addressed the question of whether what the tests are for whether it is a related proceeding or not. But inherent in all of this, even if it is a related proceeding, is a notion of fair notice to the parties as to which set of rules are being applied. I understand your best argument to be that no one ever said to the district court here because this is a related proceeding, the bankruptcy rules apply. And indeed, all of the briefing to the district court up to the point of your motion referred to the rules of civil procedure and every citation from the bankruptcy court referred to those. So it may be perfectly fine once the issue has been timely raised to say the district court maybe does not have discretion but that this amendment to the bankruptcy rules shortening the time for 59E motions was never meant to set a situation where everyone was relying on the federal rules. And then after the fact, after that reliance, you are now faced with the question for the first time of whether the case was related. And furthermore, the district court here didn't rule on that. You're asking the court of appeals for the very first time to address the question. Whether such an argument has any purchase or not, I don't know. But that, I thought, was the argument that you were essentially making. Yes, that's exactly the argument, Judge Lynch. There was never a single reference by the district court of any of the bankruptcy rules. The parties did not understand this proceeding to be governed by the bankruptcy rules. And it was only after the motion for reconsideration was filed that the defendant in the case raised this shortened timing period for Rule 59 motions in a rule that no one ever thought had applied or would apply. And these rules are not designed to be a trap for the unwary, to kick in sight unseen without any notice to either parties or by the district court. And in the absence of any explicit authority requiring the district court to apply those rules, and there is none, I think Your Honor is exactly right. I would just add one more. No, no, no, no, please. All I did was outline an argument, and I told you I wasn't sure whether it had merit or not. I appreciate that, Your Honor. Counsel, excuse me. I just have one question here. Can you point me to any occasion, as you know, in many respects the bankruptcy rules incorporate the federal rules of civil procedure, except where the two are inconsistent. Is there any point in the district court proceedings where the district court referred to the civil rules in a way that was inconsistent with the bankruptcy rules? Yes, yes, Your Honor. And we've identified a couple of those examples. There were specific federal rules invoked and referenced by the district court, and what the Canadian Pacific here says is, well, those rules are incorporated into the bankruptcy rules. That's true, but only for adversary proceedings. And this case is not an adversary proceeding. That actually gets to the final point I wanted to make. All right. But you're relying, if we set aside for a moment that distinction that you attempt to draw between adversary proceedings and related cases, is there any point where the district judge cited or relied on a federal rule where the result would have been different had he pointed to a bankruptcy rule instead? I'm sorry. I see what you're saying. No, I don't think that there was any difference between the two other than the application of this shortened timing period for the motion. Right. And this issue, of course, never came up in the district court because the only effect of this difference relates to appellate jurisdiction, not a problem with which the district judge is concerned. Well, we don't know what the district court thought about this. But I'm saying the district court wouldn't normally be expected to pass on this particular difference between the bankruptcy rule and the civil rule because this difference is only material in terms of appellate jurisdiction. I don't agree with that, Your Honor. This was a motion for reconsideration. Had the district court believed that it was untimely, it would have ruled and denied the motion to reconsider as untimely because it was filed too late. But a motion for reconsideration, we have said, can be made at any time. The question, what's unique about this is it's a motion for reconsideration to which you want to attach a tolling effect for purposes of extending the appeal period. Your Honor, this was not a motion for reconsideration that could have been made at any time. It was a Rule 59E motion for reconsideration. Time has expired. Answer the question. It was a Rule 59E motion for reconsideration which does have a specific 28-day time limit. Thank you, Your Honors. I'll save the rest of my time for rebuttal. Okay. Thank you. Attorney Wessler, please mute your device. Attorney Hemming, please go ahead and introduce yourself on the record. Good morning. Paul Hemming for FLE Canadian Pacific Railway Company. I'd like to first address a couple of questions that Your Honors have brought up during the opening argument. First, with respect to the diamond mortgage case, that case doesn't apply whatsoever. It concerned a previous iteration of the bankruptcy rules that had expressly limited their application to United States bankruptcy courts. That case is simply not applicable. The contention that this is not an adversary proceeding, I would point the court to Bankruptcy Rule 7001, subparagraph 10. And under that rule, it defines an adversary proceeding as a proceeding to determine a claim or cause of action removed under 28 U.S.C. 1452. So this is an adversary proceeding to which the bankruptcy rules apply. I'm sorry. The claim is not made against the bankrupt. The claim is being made against Canadian Pacific, which to the best of my knowledge is not in bankruptcy. That's correct, Your Honor. But for jurisdiction purposes and for removal, a non-core case that's related to a bankruptcy still can have the rules apply in the manner we've briefed. That may be, but that's not responsive to your attempt to persuade us that this is in fact an adversary proceeding as defined by the rules. You can answer that or you can move on. I would like to answer that, Your Honor, and I would also reference that Bankruptcy Rule 9027G, which if you accept my proposition that 7001, subparagraph 10, defines this as an adversary proceeding, the latter rule says that the bankruptcy rules apply to a claim or cause of action removed to a district court from a federal or state court and govern proceeding after removal. I would also point the court's attention to the Celotex case, which we cited in our brief, which was a case that applied the bankruptcy rules, despite the fact that neither party was the debtor in bankruptcy. Counsel, let me just tell you what I think is your main problem in this case. All right? I think I understand your technical legal arguments, and they may have considerable force, but there is some aura about this case of unfairness because of the fact that the bankruptcy rules were never mentioned in the district court, that this case was pending for a fairly long time, that no one ever, no one, the judge, the lawyers, no one ever mentioned the applicability or potential applicability of the bankruptcy rules. And now, all of a sudden, like a rabbit out of the hat, you pull on appeal this reference. I'm not criticizing your strategy, but I'm troubled by the notion that there's something about this that feels unfair, and I wonder if there's anything you can do to ease that feeling. Sure, Your Honor, and I recognize your concern, and the concern I think you're having, Judge Salier, is because this was the first time that the application of the bankruptcy rules really was invoked. There was never an opportunity to invoke this argument before. No, counsel, counsel, that's plainly not correct. You may not have thought there was an issue which required it, but to say there was no opportunity for Canadian Pacific to say, gosh, Judge, we think this is a related proceeding, and therefore we ought to proceed under the bankruptcy rules. You had the opportunity. You never once said it. You're correct, Your Honor. We did not say before this appeal that the bankruptcy rules, in our view, applied. We did say that this was a, the basis for jurisdiction was related to bankruptcy and removed under that basis, but you're correct. We did not say, in our view, we think the bankruptcy rules ought to apply. Nothing below through the entry of judgment is challenged in any fashion on this appeal. The sole issue challenged concerns the district court's denial of plaintiff's post-judgment Rule 59 motion, which had appended a proposed revised Second Amendment complaint. The district court did not abuse its discretion by summarily rejecting plaintiff's post-judgment reconsideration request. Post-judgment motion to amend is not subject to liberal amendment treatment as are pre-judgment motions to amend. To prevail on a post-judgment motion to amend a complaint, the moving party must first establish a basis under Rule 59 to vacate the judgment before any motion can be considered. That type of relief is described as extraordinary. Plaintiffs did not even attempt to demonstrate a Rule 59 extraordinary basis on which the district court could set aside the judgment dismissing Canadian Pacific Railway Company. Instead, plaintiff's post-judgment motion to amend sought permission to begin under the shell of a dismissed action, a new action against a different defendant. Under these circumstances, even if the Rule 59 motion were timely, the issue we talked about just a moment ago, the district court acted well within its discretion to deny it. I'd like to divide my time into three areas. First, a very brief, truncated statement of relevant underlying background. Second, jurisdictional problems with this appeal, which we've already covered in large part. And third, standards applicable to the post-judgment relief. A pair of recent First Circuit cases from Judge Lynch and Judge Selya compel affirmance on that point. Appellants brought negligence claims against Canadian Pacific Railway Company and many others pursuant to an amended complaint. Claims stem from a major crude derailment of a Montreal, Maine, and Atlantic train, which company quickly entered bankruptcy thereafter. The amended complaint describes actions and inactions of that carrier that resulted in the derailment, which caused death, personal injury, and property damage. Pursuant to 28 U.S.C. 1452A and 157B5, which are mentioned in the underlying motion to dismiss order, the cases were initially filed in Illinois and Texas state courts, but then removed and ultimately transferred to the District of Maine where the railway's bankruptcy pended. Once in Maine, a number of common motions were filed in one case, Roy, and were agreed and deemed applicable to the broader collection of cases. Four motions across all cases were briefed and argued. Two of those motions were reached. In the first, the district court granted Canadian Pacific Railway Company's motion to dismiss on three separate grounds, not reaching a fourth. Despite this order being listed in the notice of appeal, that order is not challenged here in any fashion. Any argument about the propriety of that order is waived by its lack of inclusion in the appellant's brief. Given that there was a pending motion to dismiss in the district court, the plaintiffs also sought, again, prejudgment by separate motion, leave to file a proposed second amended complaint. The proposed amendment asserted other allegations and additional parties. That prejudgment motion to amend was denied as futile. Despite being listed again in the notice of appeal, that order is also not challenged here in any fashion. Judgment followed. Appellants sought reconsideration 28 days later, seeking to vacate the judgment under Rule 59, and then seeking leave to file what was called a proposed revised second amended complaint, which was appended to the Rule 59 motion. It actually would be a third amended complaint, depending on how you call it. Mr. Hemming, this is quite valuable, and I take your point that there was no argument as to the extraordinary relief. But the essence, as I understand it, of the plaintiff's argument is they didn't know this information to permit them to file what you call the third amended, maybe second amended complaint until shortly before they filed it. That explains the fact that they were late. The district court never commented on that. The district court simply thought that they didn't meet the Iqbal plausibility standard as to common enterprise. But I'm interested in what your response is to their assertion. They really could not have known about the, I think it's the Sue line, that they're now focused on until they'd gone through a lot of discovery and until they filed their motion. Sure, I understand your question, Judge Lynch. I think I can point you to some places in the record that would support a position on this. First, for this to be really new evidence, it has to be previously unavailable if it's going to be subject to a Rule 59 motion. It wasn't. What they actually knew or understood probably is not relevant because there's things in the record that demonstrate they did know about Sue line railroad company well before judgment was entered. And I'd point the court to a couple things. First, in the post-judgment reconsideration motion, the one where they attached and appended the proposed revised second amended complaint, it was supported by a declaration. Now, the declaration didn't get into reasons about why or why not this evidence about Sue line railroad company was previously available. That was the burden. They should have done it. But even stronger is the fact that they appended publicly filed documents with the SEC from 2015, probably over a year and a half before judgment, to support the reconsideration motion. I'd also point the court to the oral argument that was conducted in early July of 2016 on both the pre-judgment motion to amend and the motion to dismiss. In that oral argument, the plaintiff's counsel, it's in the appendix, talked about Sue line. And said Sue line was the vehicle through which that originated the movement. And that Sue line was the vehicle through which the Canadian company operated here in the United States. In this instance, the U.S. Midwest. So I believe they did know. I don't think this was anything hidden. Sue line railroad company is a very well-known company. It's a U.S. common carrier. It's certainly known in my locality. Mr. Hemming, what is your locality? I'm in Minneapolis, your honor. Okay. So it's well-known in the Midwest. It is. It is. Counsel, what do we, assuming we would have reached the merits of this, the grant or denial of this motion is a matter committed to the discretion of the district court. The district court expressly based its order of denial on the ground of futility. That's the way in which the court exercised its discretion. Not on the ground that the motion was too late or that the plaintiff should have found this information to be available earlier. But on the ground of futility. So how can we uphold an exercise of discretion based on a specific ground unless we think that ground is justified by the record? Certainly, Judge Selye. And I'll address your question by pointing out there were actually two motions to amend. There was a prejudgment motion to amend, which was denied as futile in a well-reasoned opinion, which is not challenged on this appeal. In that prejudgment motion to amend, which isn't challenged here, they did try to add Sioux Line as well as a number of other railroads, which was denied as futile. If they had challenged the futility decision, which they did not, futility is reviewed de novo. Here, what they are challenging is only the second post-judgment amendment attempt, which was done under a Rule 59E reconsideration motion. They had to vacate that judgment, set it aside before they could get post-judgment relief on a motion to amend. They didn't. Did that answer your question, Judge Selye? Are you saying that when Judge Levy denied the reconsideration motion, he did not state a ground for denying it? He did not state a ground. That motion was summarily denied. The futility decision was prejudgment. The denial of the reconsideration motion was post-judgment, done in a summary fashion, which I think is often done on reconsideration motions. Time has expired. Do you have anything else, Mr. Hemming, to close your argument? I will just conclude my argument by saying any apparent basis for denying the reconsideration request is appropriate. This doesn't need to be remanded. It happens quite frequently. Judge Lynch, in your Decatur case, both a pre- and post-judgment motion to amend was denied without opinion. That case was still affirmed, despite the fact there was a summary order in the district court. A final statement I would like to end on is really, Judge Selye, it's from your decision in ACA Financial, and it's the plaintiffs do not get to leisurely take repeated bites at the apple, forcing a district court judge to decide whether each successive complaint was adequate. Here we have two well-reasoned denials. There's no attempt to do a third post-judgment. We would ask this court to affirm. Thank you. Thank you. Attorney Hemming, please mute your audio and video. Attorney Wessler, please unmute your audio and video and reintroduce yourself on the record. Yes, Matthew Wessler for the appellants. Your Honors, I'd like to start, I think, where we just left off, which is the effect that this final judgment had on the plaintiff's ability to amend their complaint. Judge Selye, you're right. The pre-final judgment basis for denying the plaintiffs the ability to amend their complaint to add sueline was futility. Normally, under most circumstances, plaintiffs at that point would be able to seek leave to amend to cure that defect. Here, the plaintiffs had the evidence available to them that would have eminently cured the futility problem, which was, in the district court's view, that the complaint didn't include a specific allegation that sueline drove the train. The problem is that before they had a chance to do that, final judgment kicked in, and they were forced to pursue the only pathway they had available to them, which was a Rule 59 motion for reconsideration. What Canadian Pacific says, and I think this is really the kind of nub of the dispute, the only way a party can succeed in a Rule 59 motion for reconsideration is to establish the exacting standard of either manifest error or new evidence. But when a party files a Rule 59 motion seeking reconsideration for the purpose of amending a complaint, the standard is different. You argue that it's the leave-freely-granted standard of Rule 15? Correct, Your Honor. That follows from the Supreme Court's decision in Fomin. It follows from this court's decision in Ondes. And it's the approach that's taken by every court of appeals in the country, because the finality interests, when it comes to curing a prejudgment defect identified by a district court, is different than the kind of Rule 59 motion you'd normally see that would require new evidence or manifest error. I'm sorry. Judge Selye and then I have a question. No, that's all right. Go ahead, Judge Lynch. All right. According to your opponent, information about Soo Line was available in 2015 from public records, and that in the prejudgment motion to amend, you could have cured it prejudgment had you been more diligent in pursuing it. And you didn't, and even if the district court acted a little too promptly in entering judgment, it doesn't much matter here, because the district court was correct at that point in its ruling on futility. And the fact that you're doing it post-judgment doesn't mean you're entitled to the benefit of the prejudgment Rule 15 standard. Yes. So let me start from the beginning and try to get to the end of that question, Judge Lynch. The first part of that question was, did we know about Soo Line in 2015? No, no, no. Not did you know. Could you have known? No. And the answer is no. And here's why. What happened in this case is that Canadian Pacific identified itself as the driver of the train from North Dakota through the United States. That happened in the bankruptcy proceeding. They represented to the bankruptcy court that they were the ones who drove the train, and it appeared in Judge Torrison's decision in Maine in the bankruptcy proceeding. It was on that basis that the plaintiffs in this case pled that it was Canadian Pacific who drove the train. I might add also that it was the bankruptcy trustee who pled the same thing based on the same representation. And it was only after the plaintiffs filed their motion for their first pre-judgment motion for leave to amend that that Canadian Pacific actually identified Soo Line as the entity responsible for driving the train. So it is not the case at all that we could have known or did know that it was Soo Line that was responsible for the train. Now, to get to the second question, the district court denied, not for, as Judge Selye noted, undue delay or prejudice to the defendant when it denied pre-judgment the plaintiff's motion for leave to amend. All it said was, you have got Soo Line in this case, yes. You've attempted to get Soo Line in this case, yes. But I'm just going to quote it. Time has expired. If I could briefly finish. Yeah, go ahead. This is what the district court said. The proposed second amended complaint, this is the pre-judgment complaint, does not allege that Soo Line operated the train before it crossed the U.S.-Canadian border. That is the only, only allegation that the plaintiffs needed to add. The only way they could do that, once they found out that that was the defect, was through a Rule 59 motion. And under those circumstances, under Foman and Ondes, the Rule 15 standards apply and there's no, none of those factors are present here. And that is why the district court in this case should have allowed the plaintiffs at a minimum to simply plead their amended complaint to get this case back on track. I have a further question and then Judge Katzmann. My further question is, your opponent keeps implying that you could have filed a notice of appeal immediately from the denial of the pre-judgment motion to amend. But you did not and it's not argued, it's not at issue here. What's your response? I think that's, I think that's right. But the only reason that there be a notice of appeal would be to challenge the merits of the futility decision that Judge Leiby reached. And that isn't what the plaintiffs want to do. They don't want to pursue a complaint that includes defendants who shouldn't be in the case. All they want to do... Okay, thank you. Judge Katzmann. So counsel, this goes to the futility issue with respect to the proposed revised second amended complaint. And as you know, at page 28 of the defendant's brief, they say that because none of the actions, alleged actions or inactions of Sue Lyne took place in Maine. And that the revised cause of action, they say, is unrelated to Maine. There would be no jurisdiction properly lying and hence the revised second amended complaint is futile unless the bankruptcy rules are deemed applicable. Yes, that is the argument. Sorry, sorry, Your Honor. Your response? Yes, that is an argument they make. Of course, the district court never passed on that argument. It gave no justification whatsoever for denying the motion for reconsideration. And Sue Lyne will be free to argue that it is somehow lacks personal jurisdiction or service of process will be defective on remand. But of course, just to remind the panel, this case did not start in Maine. These cases are wrongful death cases that started in state court in Illinois. And Sue Lyne, its corporate offices and headquarters are in Illinois. The key decision making about this train occurred in Illinois. And so in our view, once these cases are remanded and sent back where they belong, which is state court, there will be no service of process or personal jurisdiction issues. Thank you. Thank you. Thank you all. That concludes arguments for today. The session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.